James DEL RIO, Plaintiff,

v.

T. G. KAVANAGH, Chief Justice and J. W. Fitzgerald, M. S. Coleman, C. L. Levin, B. Moody, Jr., J. L. Ryan and G. M. Williams, Associate Justices, Michigan Supreme Court, J. L. Honigman, Chairman and G. E. Bushnell, Jr., W. Cain, J. H. Gillis, J. E. Mies, J. W. O'Hair and H. E. Resteiner, Members of the Michigan Judicial Tenure Commission, M. H. Barris, Chairman and W. Boersma, R. D. Weber, Members of State Bar Grievance Board Hearing Panel and L. Rosenzweig, Counsel for Panel, Defendants.

Civ. A. No. 7–71728.

United States District Court,
E. D. Michigan, S. D.

Nov. 22, 1977.

counsel of a panel of the Michigan State Bar Grievance Board (hereinafter "MSBGB"). The suit arises out of a complex series of proceedings in which the MJTC issued a formal complaint against the plaintiff alleging numerous acts of judicial misconduct, and on February 28, 1977 recommended to the Michigan Supreme Court that Judge Del Rio be removed from office, that further payment of his salary be suspended and that he be enjoined from holding judicial office in the future. See *In the Matter of Del Rio*, 400 Mich. 665, 256 N.W.2d 727 (1977). After the commencement of this lawsuit, the Michigan Supreme Court ordered that Judge Del Rio not sit as a judge in a state court for five years from the date of its decision on July 29, 1977.

The paragraphs of the complaint alleging acts of wrongdoing are contained in paragraphs VII through XVII. The Court finds it necessary to catalogue these claims in order to explain clearly the disposition of the case.

Paragraph VII alleges that the MJTC is a tribunal of "inherent and incurable bias." This paragraph cites several of the provisions of the Michigan General Court Rules which deal with the procedures of the MJTC and alleges that these procedures lead to the prejudgment of the case by the MJTC.

Paragraph VIII alleges that the MJTC, in following the authorized procedures under GCR 932.21 in making various determinations as to how to proceed in the matter of Del Rio, was placed in the position of prosecutor and that, therefore, its later adjudication of the issues involved in the charge against Judge Del Rio was biased.

Paragraph IX complains that the members of the MJTC were personally biased against Judge Del Rio and that they took actions to seek out persons who would make charges against the plaintiff.

Paragraph X complains of the actions of the members of the MJTC in receiving information about the plaintiff prior to filing of a formal complaint against Judge Del Rio and the limited opportunity that Judge Del Rio had to reply to charges made to the

Elbert L. Hatchett, Hatchett, DeWalt & Hatchett, Pontiac, Mich., for plaintiff James Del Rio.

George H. Weller, Asst. Atty. Gen., Lansing, Mich., for T. G. Kavanagh, J. W. Fitzgerald, M. S. Coleman, C. L. Levin, B. Moody, Jr., J. L. Ryan and G. M. Williams.

Joseph F. Regnier, Exec. Director and Gen. Counsel, Judicial Tenure Comn., Detroit, Mich., for J. L. Honigman, G. E. Bushnell, W. Cain, J. H. Gillis, J. E. Mies, J. D. O'Hair and H. E. Resteiner.

Louis Rosenzweig, Detroit, Mich., for M. H. Barris, W. Boersma, Richard D. Weber and L. Rosenzweig.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is an action brought by James Del Rio, formerly a judge of the Recorder's Court of the City of Detroit. This action was brought against the individual members of the Michigan Supreme Court, the individual members of the Michigan Judicial Tenure Commission (hereinafter "MJTC"), and the individual members and

MJTC prior to the time that a formal complaint was filed.

Paragraph XI alleges that the pleadings filed in the MJTC trial did not provide adequate notice of the charges such that plaintiff could prepare a meaningful defense.

Paragraph XII complains of the denial of a preliminary examination or any similar procedure as is found in a criminal case by the MJTC.

Paragraph XIII complains of the denial of pretrial discovery procedures in the proceedings before the MJTC.

Paragraph XIV complains of a denial of the right to examine the pretrial statements of the MJTC's witnesses at the hearing.

Paragraph XV, while not very clear, apparently is an allegation that the members of the MJTC knew or should have known that they were biased and prejudiced and should have refrained from going forward with procedures that they knew would result in double jeopardy problems for Judge Del Rio.

Paragraph XVII alleges very generally that all of the acts complained of in the earlier paragraphs were inspired in whole or in part by racial considerations.

In reading the complaint as a whole, the Court finds that the complaint liberally construed basically makes two types of claims: that the procedures of the MJTC are constitutionally invalid and a violation of due process and that the actions of the MJTC, whether valid or not in the due process context were unequally applied to plaintiff on account of his race.

All of the defendants have filed motions to dismiss the complaint. For the reasons discussed below, this Court will grant the motions to dismiss. The Court will discuss dismissal as to each of the three groups of defendants separately for clarity.

*Michigan Judicial Tenure Commission Members*

■ As noted above, the MJTC made a recommendation to the Michigan Supreme Court as to the disposition of Judge Del Rio's case. The Supreme Court subsequently entered its own disposition after Judge Del Rio had an opportunity to argue that the recommendation of the MJTC should not be accepted. Plaintiff raised many of the issues that he has raised in this case before the Michigan Supreme Court in the proceedings on the recommendation of the MJTC. See *In the Matter of Del Rio, supra.* Most of the issues that have been advanced in the instant suit have already been litigated and decided by the Michigan Supreme Court. As to these issues, the plaintiff is asking this Court to relitigate issues that have already been decided. In its opinion, the Michigan Supreme Court dealt with the procedural matters raised in paragraphs VII, VIII, X, XI, and XIII of the instant complaint. As to these allegations, it is not proper to attempt to relitigate the validity of the Supreme Court's decision in a collateral proceeding in the United States District Court. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The state supreme court was an appropriate forum to raise these constitutional claims. State courts are as competent and as bound as federal courts to decide issues of federal constitutional law. *Brown v. Chastain*, 416 F.2d 1012 (5th Cir., 1969). *Deane Hill Country Club, Inc., v. City of Knoxville*, 379 F.2d 321 (6th Cir., 1967). The federal district court does not provide a forum in which a disgruntled or disappointed litigant can relitigate questions of federal law which have been presented to and decided by state courts. *Rooker, supra; Brown, supra; Deane Hill, supra.*

■ Furthermore, this is exactly the type of proceeding in which federal district courts should exercise equitable restraint. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

In *Juidice* the Supreme Court noted that the federal district court should apply the *Younger* doctrine to a case in which the

state court's contempt power was involved. Plaintiffs in that case were mounting a due process challenge to the state's contempt procedures. The Court noted in an instructive passage that:

> "A state's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest . . . we think it is of sufficiently great import as to require application of the principles of [the cases that have developed equitable restraint] . . . The contempt power lies at the core of the administration of a State's judicial system." 430 U.S. at 335, 97 S.Ct. at 1217.

The Court in *Juidice* found that the state's interest in its contempt proceedings was so important that the federal court should exercise equitable restraint. Surely, it appears to this Court, an even more important and core interest of a state's judicial system is the procedure and mechanism it has adopted for policing and enforcing standards of judicial conduct of its judges. This Court can think of no more sensitive and important interest of the state's judicial system than that of assuring the integrity of the state bench. Therefore, this is clearly the type of case where this Court should exercise equitable restraint and require the plaintiff to pursue his remedies in the state courts. The plaintiff has made no allegations in his complaint that the state court cannot be resorted to for an adjudication of the federal issues presented in this lawsuit. In fact, paragraph I of the complaint indicates that "substantially the same cause of action is pending in the Michigan State Courts."

■ The requirement that this Court apply the doctrine of equitable restraint would apply to those claims that were not squarely raised before the Michigan Supreme Court as well as to those claims that were the subject of the Michigan Supreme Court's decision. In *Juidice* the Supreme Court noted:

> "Here it is abundantly clear that appellees had an *opportunity* to present their federal claims in the state proceeding. No more is required to invoke *Younger* abstention. There is no support in *Gerstein* [*Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54] or in our other cases for the District Court's belief that the state courts must have an *actual* hearing . . . in order for *Younger* and *Huffman* [*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482] to apply. Appellees need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings . . . and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." 430 U.S. at 337, 97 S.Ct. at 1218. [Footnotes omitted, emphasis in the original].

The allegations of paragraphs IX, XII, XV, and XVII could very clearly have been raised before the Michigan Supreme Court. While GCR 932.24(a)(1) provides that a petition to reject the recommendations of the MJTC must be based on the record, Subsection (e) provides that the Supreme Court, may, if cause is shown, order that further evidence be taken and added to the original record. Plaintiff could have raised the problems stated in his federal court complaint in the proceedings before the Michigan Supreme Court. GCR 932.2(b) provides that "all proceedings . . . are subject to the direct and exclusive superintending control of the Supreme Court . . . ." Therefore, because all of the allegations against the MJTC have been or should have been litigated in the state proceedings and could have been raised there and determined fairly the complaint against the MJTC should be dismissed.

*Individual Justices of the Michigan Supreme Court*

■ The Justices of the Michigan Supreme Court have made a motion to dismiss or for summary judgment on a number of grounds. The complaint, the Court finds, contains no allegations relating to any actions taken by the Justices of the Michigan

Supreme Court. Therefore, the complaint fails to state a claim upon which relief may be granted against the members of that court.

 Although it does not appear in the complaint, an argument was made at the oral hearing of these motions which indicated that plaintiff contends that the Michigan Supreme Court Justices are motivated by racial prejudice. The proper course of action for plaintiff to raise questions of racial bias or motivation would have been to request the members of the court to disqualify themselves.

In *Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), the Supreme Court applied the *Younger* abstention doctrine in spite of an allegation by a defendant in a criminal proceeding that it would be impossible for him to receive a fair trial in the state courts. The Supreme Court noted that the state had adequate provision for the disqualification of judges so that the defendant, the federal plaintiff, could be assured that there would be a way to constitute a fair and unbiased tribunal to hear his case. In the instant case, the State of Michigan provides a procedure for the disqualification of judges, GCR 405.4. On the broad and vague allegations of the complaint, which do not allege any action by the members of the Michigan Supreme Court, this Court cannot conclude that plaintiff would be unable to have his case heard by an unbiased tribunal. Thus, because there are no claims of wrongdoing on the part of the Michigan Supreme Court in the complaint and because this Court is not the proper forum to raise matters that go to the qualifications of the judges to sit, the motion of the Supreme Court Justices to dismiss is granted.

*Members of the Michigan State Bar Grievance Board and Counsel*

 The Court also finds that there are no allegations in the complaint claiming that the MSBGB has taken any actions whatsoever. Accordingly, the complaint fails to state a claim against the MSBGB.

In summary, plaintiff has raised most of his claims in the state courts and cannot now come into federal court attempting to raise them once again in the hopes of a different outcome.

As to those claims that plaintiff could have raised in the state proceedings, this Court will not entertain them at this point. This Court should abstain from interfering with state proceedings involving the disciplining of the state judiciary. *O'Neill v. Battisti*, 472 F.2d 789 (6th Cir., 1972), *cert. denied sub nom., Heitzler v. O'Neill, Chief Justice*, 411 U.S. 964, 93 S.Ct. 2142, 36 L.Ed.2d 685 (1973). See also *Coogan v. Cincinnati Bar Assoc.*, 431 F.2d 1209 (6th Cir., 1970), (State disbarment proceedings).

Accordingly, the defendant's motions to dismiss are granted.

So ordered.